force of the Secretary's regulation, we hold that it governs the present case.

REVERSED AND REMANDED.

UNITED STATES of America, Appellee,

v.

Peter LIZOTTE, Defendant, Appellant.

No. 87–1870.

United States Court of Appeals,
First Circuit.

Heard July 27, 1988.
Decided Sept. 1, 1988.

Martin D. Boudreau with whom Boudreau, Burke, Dee, McMenimen & Barber, Marshall D. Stein and Cherwin & Glickman, Boston, Mass., were on brief, for defendant, appellant.

Sydney Hanlon, Sp. Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., was on brief, for appellee.

* Of the Ninth Circuit, sitting by designation.

Before BOWNES, TORRUELLA and NOONAN,* Circuit Judges.

NOONAN, Circuit Judge.

Peter Lizotte appeals his conviction on two counts of conspiracy to defraud the United States by impeding the Internal Revenue Service in the computation and collection of revenue in violation of 18 U.S.C. § 371. We affirm.

## BACKGROUND

Peter Lizotte, a 1980 graduate of Suffolk University Law School, was a member of the Massachusetts Bar, practicing in Barnstable. A client, Dwight P. Sackett, was a cocaine dealer. Early in 1983 Lizotte became aware of Sackett's business. In 1984 Sackett told Lizotte that he had "large quantities of cash" that he could not explain legally. They discussed how a cover for the cash could be created. In July 1984 Sackett purchased an abandoned nursery, Pardon My Garden, on Route 28 in Hyannis. The price was $150,000. Sackett paid $50,000 of this amount in cash and had the deed recite that the price was $100,000. Lizotte, who knew the true price, recorded the deed. He also advised Sackett that he could not "really ask for a receipt" for the cash from the seller.

Again in 1984 Sackett wanted to buy property in Santuit with cash that could not be traced to him. Lizotte told him how to do it. Lizotte paid for the property with his own check for $36,000. To reimburse him, Sackett bought four cashier's checks, payable to Sackett's sister, Elizabeth Rossi. Sackett then arranged for Rossi's signature to be forged and gave the checks totaling $36,000 to Lizotte in reimbursement.

At least three other schemes by which Sackett could hide cash from the Internal Revenue Service had the benefit of Lizotte's advice. Sackett's testimony as to all of the foregoing transactions was the principal basis on which Lizotte was convicted of conspiracy under Count I of the Indictment.

Count II charged him with conspiracy with Michael Tomlinson, a cocaine dealer who got his supplies from Sackett. Tomlinson's girl friend, Geraldine Schell, testified that Lizotte had arranged several legitimate investments in ways that Tomlinson's name would not appear and that Lizotte had once referred to a trust that Tomlinson wanted set up as "a drug dealer's trust." Tomlinson's 20 year-old daughter Laurie testified that she had been financed by her father in the video sales and rental business and that Lizotte drew up the corporate papers for her company, telling her, "If anybody asks where the money came from, think of a good story." Joseph W. Butchka, a special agent of the Federal Bureau of Investigation working undercover, testified to being introduced by Tomlinson to Lizotte in 1985 and asking Lizotte's advice on how to invest $100,000 in cash; Lizotte gave the advice requested. On this testimony Lizotte was convicted of Count II.

### ISSUES ON APPEAL

Lizotte challenges two instructions given the jury and one ruling on evidence. We address these in turn:

■ 1. The district court instructed the jury: "A defendant may not take refuge in willful blindness. He may not ignore what is obviously before him." Lizotte contends that this portion of the charge was erroneous because there was no evidence that Lizotte was willfully blind. According to Sackett's testimony, Lizotte willingly laundered his drug money. According to the testimony bearing on Lizotte's relation to Tomlinson, Lizotte also knew that he was advising Tomlinson on the laundering of drug money. The unfairness in the instruction, Lizotte contends, was this: the instruction permitted the jury to conclude that Sackett was lying, as the defense argued, but then convict Lizotte on the basis of other evidence which did not establish Lizotte's guilt. Similarly, Lizotte argues, on the Tomlinson count the jury was in effect told that they could disbelieve witnesses such as Laurie Tomlinson, who testified to Lizotte's knowledge of Tomlinson's

business, but still could convict on the basis of other evidence which did not directly show Lizotte's guilt. In this appeal, Lizotte invokes the dictum in *United States v. Picciandra*, 788 F.2d 39, 46 (1st Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986) and argues that "a willful blindness" instruction can be given only when "a defendant claims a lack of knowledge [and] the facts suggest a conscious course of deliberate ignorance." *Id.* Here, it is contended, if the jury did not believe the witnesses testifying to Lizotte's actual knowledge, there was no evidence suggesting that Lizotte pursued a course of deliberate ignorance.

Lizotte's objection fails. It assumes that the jury had to believe all of a witness's story or none of it. But a jury may find a witness credible in part and incredible in part. For example, the jury could have believed Sackett lied about his explicit acknowledgment to Lizotte of drug-related cash, but had testified truthfully about the arrangements he made with Lizotte to hide the cash. If the jury so believed, there was evidence before it justifying the inference that Lizotte had consciously avoided what was obviously before him.

The instruction did not mandate the inference. The words to which objection is made consisted of two sentences in a charge that runs for 20 typed pages and carefully respects the independence of the jury in its function of making factual inferences. Although Lizotte did not testify and personally claim a lack of knowledge, the thrust of his counsel's presentation of the case to the jury was that the transactions Lizotte carried out for Sackett and Tomlinson were proper legal work without guilty design or knowledge. The instruction told the jury how they might evaluate this claim. Accordingly, the instruction was appropriate. *United States v. Martin*, 815 F.2d 818, 823 (1st Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 89, 98 L.Ed.2d 51 (1987). As a whole, the instructions fully and fairly laid the case before the jury.

■ 2. The district court in its charge referred to a conversation between Lizotte and Butchka where it was observed that

some of the investments they were discussing would not yield a profit but would be "just a place to keep your money." The court told the jury, "You might consider that to be unusual.... That's the sort of thing you might want to consider. Whether it has any effect or not is certainly not for me to say. You are the people to make these judgments." Lizotte objects that this part of the charge told the jury that it might draw an inference of criminal intent from a portion of a conversation that was entirely proper in its focus on capital appreciation as more advantageous than cash profit. Due process, Lizotte contends, was denied him when the jury was permitted to make such an inference. *Francis v. Franklin*, 471 U.S. 307, 314–315, 105 S.Ct. 1965, 1971–1972, 85 L.Ed.2d 344 (1985).

The objection fails. It is well within the discretion of the district court to comment on the evidence. *Aggarwal v. Ponce School of Medicine*, 837 F.2d 17, 22 (1st Cir.1988). The judge's comment did not invade the jury's province of deciding credibility, making inferences, and weighing testimony. *See Quercia v. United States*, 289 U.S. 466, 470–71, 53 S.Ct. 698, 699–700, 77 L.Ed. 1321 (1933). The judge's comment directed the jury's attention to a conversation that did indeed begin with a discussion of legitimate investments, but where Butchka, posing as a drug dealer, then revealed to Lizotte that he had $200,000 in cash in a suitcase and Lizotte told him that while he had "a problem" Lizotte "could siphon the money through a legitimate business." In context, Butchka's testimony as to this conversation was probative of Lizotte's method of operation and so of his criminal intent.

■ 3. Sackett, in his lawful work a wholesaler of fish, was accustomed to keeping records; he also kept records of his drug sales. Each evening of 1984 he wrote on the calendar the amount of cocaine he had sold that day with a code number for the buyer. At the end of 1984 he transferred the weekly sales totals from 1984 to the 1985 calendar for the corresponding weeks so he could make an easy comparison between how he did in 1984 and how he was doing in 1985. He destroyed the 1984 calendar. Lizotte objected to the introduction of the 1985 calendar in evidence and presses the objection here.

The objection is without merit. Sackett's 1984 entries were a business record made contemporaneously with the sales of the drug and so were admissible. Federal Rules of Evidence 803(6). Sackett's transfer of the record to another calendar did not destroy its credibility.

AFFIRMED.