UNITED STATES of America, Plaintiff,

v.

**Steven Dave AVERY, Defendant.**

**CR No. 91–17–03–MA.**

United States District Court,
D. Oregon.

Aug. 19, 1991.

---

**11.** It was not clear whether or not Shue had the landlord's permission to store his possessions in

the file cabinet.

**1402**

Charles Turner, U.S. Atty., Robert Thomson, Asst. U.S. Atty., Portland, Or., for plaintiff.

Steven Wax, Federal Public Defender, Portland, Or., for defendant.

## OPINION

MARSH, Judge.

Defendant is charged in a four count indictment with conspiracy to commit bank robbery and two individual counts of bank robbery in violation of 18 U.S.C. §§ 371 and 2113(a). On March 1, 1991, pursuant to a plea agreement, defendant entered a plea of guilty to Count II, the December 10, 1990 robbery of the Lovejoy Branch of the U.S. National Bank, in exchange for a dismissal of the remaining counts of the indictment.[1]

In the course of its investigation, probation determined that defendant was convicted of the following three "crimes of violence" as defined by § 4B1.2:

(1) A May 13, 1976 federal conviction for conspiracy to rob a bank in Healdton, Oklahoma;

(2) a July 30, 1976 state conviction for Robbery II in Stockton, California; and

(3) a February 7, 1983 federal conviction for bank robbery in Springfield, Oregon. All three convictions are substantiated by facially valid judgments. The 1976 Oklahoma conviction was affirmed upon direct appeal to the Tenth Circuit Court of Appeals. With this limited exception, defendant's three previous convictions have not been subject to direct challenges or habeas corpus proceedings.

Defendant has filed a series of objections to specific paragraphs of the presentence report in addition to a separate memorandum challenging the constitutional validity of the Oklahoma and California convictions used as the basis for a career offender computation.[2] On July 29, 1991 I denied

---

**1.** Following the completion of the presentence report, defendant filed a motion to withdraw his plea based upon his recognition of the severity of the potential sentence. On July 29, 1991, after reviewing the transcript of the plea hearing, I denied defendant's motion to withdraw his plea based upon my finding that defendant was fully advised that he faced a potential sentence of 168 months based upon his probable classification as a "career offender."

**2.** Defendant does not contest the constitutional validity of the 1983 federal bank robbery conviction.

defendant's specific objections to the presentence report except insofar as they related to the paragraphs regarding defendant's career offender status. The following constitutes my findings and conclusions regarding defendant's ability to raise a collateral attack against two of his prior convictions at the time of sentencing, as well as my findings regarding the constitutionality of defendant's prior convictions.

## DISCUSSION

1. *Career Offender Enhancement: Collateral Attacks at Sentencing*

Section 994(h) of Title 28 mandates that the Sentencing Commission assure that certain "career offenders" are sentenced "at or near the maximum term authorized." Sentencing Guideline § 4B1.1 implements this mandate by creating a separate offense level grid. *See* Background Commentary to § 4B1.1. Thus, if a court determines that the requisites for career offender status have been established, a defendant automatically receives a criminal history category of VI and his offense level is determined by reference to a separate scale based upon the offense statutory maximum.

Under the statutory and guideline scheme, a defendant shall be sentenced as a career offender if the following three requisites are met:

(1) the defendant is at least 18 years of age;

(2) the instant offense of conviction is a felony that is a "crime of violence" [3] or a controlled substance offense; and

(3) the defendant has previously been convicted of two or more felonies involving a crime of violence or a controlled substance offense.

28 U.S.C. § 994(h); and U.S.S.G. § 4B1.1.

▮ Section 4A1.2 defines a "prior sentence" to include any sentence imposed in an unrelated case upon an adjudication of guilt by plea or trial. This definition is further modified by application Note 6 to 4A1.2, as amended effective November, 1990, which provides as follows:

"Sentencing resulting from convictions that have been reversed or vacated because of errors of law, or because of subsequently discovered evidence exonerating the defendant, are not to be counted. Also, sentencing resulting from convictions that a defendant **shows to have been previously ruled constitutionally invalid are not to be counted.** Nonetheless, the criminal conduct underlying any conviction that is not counted in the criminal history score may be considered pursuant to § 4A1.3.

[emphasis added]. The "background" section, also added in 1990, specifically points out that "[t]he Commission leaves for court determination the issue of whether a defendant may collaterally attack at sentencing a prior conviction." The Commission's Historical Note, Appendix C, amendment 353, further explains that the amendment was intended to clarify the Commission's position that uncounseled misdemeanor offenses *should* be counted for the purpose of determining a criminal history under Chapter 4, Part A.

I have been unable to find any published decisions which directly address the impact of the amended version of Application Note 6. However several opinions which discuss the former version of Note 6 are instructive.

In *United States v. Newman*, 912 F.2d 1119 (9th Cir.1990), defendant appealed his sentence arguing that the district court erred by including a 1978 state conviction in the computation of his criminal history score.[4] Defendant alleged that his plea of guilty was neither knowing nor voluntary because the state judge failed to establish the factual basis for his plea. Without

---

**3.** Section 4B1.2 defines a "crime of violence" as any offense under federal or state law which involves the use, attempted use or threatened use of physical force against another.

**4.** Inclusion of the 1978 conviction resulted in a Guideline Range of 63 to 78 months (based upon an offense level of 20 and a criminal history category of V). Exclusion of the conviction would have resulted in a Guideline Range of 51 to 63 months under a criminal history category of IV.

addressing the issue of whether defendant *could* challenge the validity of a state conviction in a federal court at the time of sentencing, and further, without noting whether or not defendant had ever pursued a direct appeal of that conviction, the court addressed the issue of which party bears the burden of proving the invalidity of a state conviction. At the time of his conviction, USSG § 4A1.2 comment (n. 6) provided as follows:

"Convictions which the defendant shows to have been constitutionally invalid may not be counted in the criminal history score."

Based upon this language, the court held that the ultimate burden of proof in demonstrating constitutional infirmity rests with the defendant. *Newman*, 912 F.2d at 1122. Defendant bears the burden of proving the constitutional infirmity by a "preponderance of the evidence." *Id.*, at 1123.[5] The court later suggested that a defendant might accomplish this through his own testimony or the testimony of others at an evidentiary hearing and by introducing a transcript of the proceedings. *Id.*, at 1123.[6] After reviewing the transcript of the hearing in which defendant entered his plea, the court concluded that the defendant failed to satisfy his burden of proving involuntariness. *Id.*

In *United States v. Guthrie*, 931 F.2d 564 (9th Cir.1991), a defendant challenged the addition of three points to his criminal history score for a 1973 California narcotics conviction which he claimed was obtained in violation of the Sixth Amendment. Specifically, defendant alleged that a conflict of interest arose when his attorney represented him while representing two co-defendants, and that this conflict rendered his attorney's assistance ineffective. *Id.*, at 571. The court, relying upon the former version of § 4A1.2, Application Note 6, held that "if the district court proposed to increase the defendant's criminal history score based on a prior state conviction, the defendant was entitled to challenge the validity of that conviction." *Id.*[7]

The court acknowledged the 1990 changes to Application Note 6 and commented that the amendment "implies that defendants no longer may challenge prior convictions at the sentencing stage." *Id.*, at n. 4. However, the court indicated that the issue was still open, citing the "background" section to 4A1.2 and noting that "the Constitution may afford such a right [of collateral attack]." *Id.*, at n. 3 and n. 6 *citing United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).[8]

In *United States v. Mims*, 928 F.2d 310 (9th Cir.1991), a defendant appealed a sentence imposed under the career offender

---

**5.** Compare the standard that we are directed to apply to habeas cases in which the defendant has failed to exhaust state proceedings: 28 U.S.C. § 2254(b) requires that a petitioner exhaust state remedies prior to filing a petition with federal court. This requirement may be waived upon a showing by the petitioner that he had cause for the bypass of state procedures and actual prejudice resulted. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 906 (9th Cir.1990).

**6.** Several other circuits adopted a similar approach based upon the language contained in former n. 6 to Guideline 4A1.2. *See United States v. Unger*, 915 F.2d 759 (1st Cir.1990); *United States v. Wildes*, 910 F.2d 1484 (7th Cir.1990); and *United States v. Jones*, 907 F.2d 456 (4th Cir.1990).

**7.** The district court held a hearing to determine whether defendant's representation in 1973 was ineffective and found that it was not. *Guthrie*, 931 F.2d at 571.

**8.** *Tucker* is distinguishable in several respects. First, *Tucker* came to the Court on a petition for habeas corpus pursuant to § 2255. In that case, defendant was sentenced to a maximum penalty of 25 years based, in part, on his extensive criminal history. Following the federal sentence, and apparently after the Supreme Court's decision in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), a California Superior Court held that two of defendant's prior state felony convictions were unconstitutionally obtained because defendant was not represented by counsel and was not advised of his right to the assistance of counsel. The Supreme Court affirmed the 9th Circuit's decision to remand the case for resentencing since the petitioner was "sentenced on the basis of assumptions concerning his criminal record which were not true." *Tucker*, 404 U.S. at 448, 92 S.Ct. at 592.

guidelines. During the sentencing hearing, defendant filed a motion challenging a 1980 Florida state conviction for armed robbery on grounds that the government failed to adhere to the terms of the plea agreement and alleging that he received ineffective assistance of counsel because his attorney represented co-defendants with conflicting interests. In reviewing the district court's findings, the court emphasized that the effect of such a challenge to a prior conviction was limited to the use of the convictions as a basis for enhanced punishment and that any finding would have no "preclusive effect in state or federal habeas corpus proceedings challenging the same conviction." *Id., citing United States v. Jones*, 907 F.2d 456, 468–9 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991); *see also Guthrie*, 931 F.2d at 571.⁹ Finally, the court also noted that, at the time of the sentencing hearing, defendant was not incarcerated nor subject to an outstanding warrant in connection with his 1980 conviction, and thus, he would have been otherwise unable to challenge the validity of his 1980 state plea on the grounds of mootness. *Id.*, at n. 2.¹⁰

Subsequently, in *United States v. Carroll*, 932 F.2d 823 (9th Cir.1991), the court, again in reliance upon the former version of Application Note 6, held that a defendant may establish the constitutional inval-

idity of a prior conviction used to raise an offense level under the guidelines through testimony at an evidentiary hearing.¹¹ The court reasoned that the standards utilized in habeas proceedings should be applied to sentencing hearings "because the consequences to a defendant of a prior conviction may be as serious under the guidelines [as they are in habeas petitions]." ¹²

But for the existence of *Newman, Guthrie, Mims* and *Carroll*, I would deny defendant's challenges to his underlying convictions solely on the basis that he has not shown that the prior convictions have been "previously ruled constitutionally invalid" as required by the 1990 amendments to § 4A1.2 and Application Note 6.¹³ Until recently, courts have treated guideline application notes as "persuasive," but noted that they are not binding law. *See e.g. United States v. Watt*, 910 F.2d 587, 591 (9th Cir.1990) (application notes have same force as legislative history); and *United States v. Gross*, 897 F.2d 414, 416 (9th Cir.1990) (rejecting part of Application Note 3 to U.S.S.G. § 4A1.2(a)(2). However, in *United States v. Anderson*, 942 F.2d 606, 612 (9th Cir.1991) (en banc), the court held that guideline commentary is entitled to "considerable weight, more so than legislative history," but less than the guidelines themselves. Thus, the court held that district courts *"shall* consider the guideline

---

**9.** The Ninth Circuit noted the recent change in the Guideline 4A1.2, note 6 and found that it did not apply since defendant was sentenced prior to the amendment's effective date. *Mims*, 928 F.2d at 312 n. 1.

**10.** As to Mims' claim that the government failed to adhere to the plea agreement, the court reviewed the transcripts of the Florida proceedings and found that defendant was made fully aware of the terms and potentialities of his plea agreement. The court also appeared to place great weight on the fact that a Florida Appeals court had already rejected the claim in 1982. *Mims*, 928 F.2d at 313. Finally, the court upheld the district court's determination that defendant failed to show that his representation in the 1980 conviction was constitutionally deficient. *Id.*

**11.** The court recently issued an amended opinion which added a footnote acknowledging the November 1, 1990 guideline amendment to Ap-

plication Note 6, but noting that the defendant was entitled to avail himself of the guideline provisions which were in effect at the time of his sentencing. *United States v. Carroll*, 932 F.2d 823, 825 (9th Cir.1991).

**12.** The court upheld the district court's determination that two of the contested prior convictions were valid since court transcripts demonstrated that defendant affirmatively waived his rights to a jury trial. However, the sentence was reversed and remanded for resentencing to determine the validity of a third conviction for which no record existed. The court held that the district court "should have given defendant the opportunity of a hearing on whether or not he had waived his constitutional rights."

**13.** Guideline Section 1B1.7 cautions that failure to follow guideline commentary "could constitute an incorrect application of the guidelines subjecting the sentence to possible reversal on appeal."

and commentary together," and construe them consistently where possible. *Id.*, at 613–14. It is only when the guidelines and commentary cannot be construed consistently that the commentary may be disregarded and the guideline language applied. *Id.*[14] Accordingly, because Application Note 6 interprets and explains Guideline 4A1.2(a), I must consider the guideline and commentary together in determining whether defendant's prior convictions constitute "prior sentences" for the purpose of a career offender enhancement.

However, based upon the constitutional concerns raised by defendant and the fact that the background note leaves the ultimate question of the availability of collateral attacks during sentencing to the courts, I must also look beyond the language of the application to the notes to prior decisional authority to determine the issue of whether a defendant must be allowed to collaterally attack a prior conviction at sentencing.

In *Mims* and *Jones* the courts imply that there may be some distinction between prior convictions which are still subject to habeas review and those which are not. The circumstances in *Guthrie* underscore a significant deterrent to holding an evidentiary hearing *prior* to a state determination on the constitutionality of a sentence. In *Guthrie*, the district court held an evidentiary hearing and found that the defendant failed to meet the burden of establishing that his prior state conviction was invalid. Thereafter, the defendant filed a petition with a California Superior Court which vacated his conviction. Defendant then returned to the federal district court on collateral review under 28 U.S.C. § 2255 argu-

ing that he should be re-sentenced in light of the California court's decision. The district court refused to be bound by the California court's decision in light of its own findings.[15] The Ninth Circuit reversed, and held that "the district court was bound by the Sentencing Guidelines to respect the state court's judgment vacating Guthrie's conviction." *Guthrie*, 931 F.2d at 572.

In *Jones*, although the Fourth Circuit rejected the exhaustion requirement, emphasizing that a finding regarding the constitutional validity of an underlying conviction during a federal sentencing does not actually invalidate a state conviction and order the petitioner's release from custody, it failed to anticipate the procedural difficulties which would be encountered by a federal sentencing judge who holds an evidentiary hearing and makes a determination which is later "trumped" by an inconsistent state ruling as demonstrated in *Guthrie*. Thus, because direct appellate review was still available to Mr. Guthrie, the hearing conducted by the district judge was superfluous.[16]

An additional justification for a rule adhering to the amended guideline language is also demonstrated in *Jones*. There, the court held that although the district court erred in determining that it lacked the power to entertain defendants' challenge to their prior state convictions, the court nevertheless noted that the ultimate result on remand might not differ. The court distinguished the narrow guideline interpretation under § 4A1.2 regarding the criminal history computation from the broader range of possibilities under § 3661. Thus, even if a defendant could show that

---

**14.** The court further directed that *Gross*, and other cases noting the limited applicability of guideline commentary "should not be relied upon in the future" in light of the new standard set forth. *Id.*, at 614, n. 5.

**15.** It is somewhat ironic that the district judge, pursuant to the 1989 version of 4A1.2, note 6, held an evidentiary hearing and had to make specific findings regarding the validity of defendant's 1973 state conviction. In contrast, after defendant's petition was filed in the California Superior court, the district attorney filed no objection and the Superior Court vacated the

conviction without a hearing and without stating the legal basis for its decision.

**16.** This process could lead to even more confusion. For example, what if a district court held a hearing and determined that a state conviction was invalid for the purposes of computing the criminal history, and thereafter, the State Supreme Court issued an opinion upholding the validity of the same conviction. Could the government thereafter file a motion for re-sentencing? If not, wouldn't this lead to inconsistent results regarding the same activity?

his guilty plea was involuntary and hence, that it should not be counted within a criminal history score, the district court could consider the acts underlying the conviction and make a one level upward departure under § 4A1.3 on the grounds that the amended criminal history category underrepresented the seriousness of the offense. *See Guthrie,* 931 F.2d at 572; and *Jones,* 907 F.2d at 467.

Thus, as a pragmatic matter, the *Jones* analysis could require a great deal of effort with no substantive change in the outcome of the sentence. Under a *Jones* analysis, anytime a defendant raised a constitutional argument against a previous conviction, we would have to consider prior transcripts and hold an evidentiary hearing. If we found, for instance, that a previously appointed counsel was ineffective or that a certain piece of incriminating evidence should have been suppressed, we would still in all likelihood find that the conduct underlying the conviction would justify an upward departure. *See e.g. United States v. Cota–Guerrero,* 907 F.2d 87, 90 (9th Cir.1990) (sentencing court could properly rely upon reversed prior state conviction under 4A1.3 if it provides reliable evidence of past criminal activity). As the Sentencing Commission emphasized in the historical notes, the purpose of the criminal history computation is to "adequately reflect the defendant's failure to learn from the application of previous sanctions and his potential for recidivism." Historical Note to 4A1.2, Appendix C, amendment 353. The fact that a conviction was obtained on an unconstitutional basis does not necessarily address this concern, whereas a conviction obtained as the result of a substantive error going to the merits of the charges themselves clearly would be relevant to the issue of recidivism.

At our last meeting when I raised the issue of whether a collateral attack should be considered at sentencing, defendant contended that a collateral attack is constitutionally mandated in light of *Guthrie* and

*Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). While I agree with counsel that *Guthrie* clearly holds that a federal sentence may not be enhanced based upon a prior conviction which has been vacated or otherwise set aside by a state court, I find that *Guthrie* did not reach the issue presented in this case regarding the propriety of raising the collateral attack at this time and in this forum. The Supreme Court's decision in *Burgett,* which involved the admission into evidence of prior invalid convictions, is also distinguishable. There, the court held that prior state convictions which were constitutionally infirm under the standards of *Gideon v. Wainwright,* and wholly unrelated to any element of the crime charged, were inherently prejudicial and the court's instruction to the jury to disregard the evidence was insufficient to alleviate the error. *Id.,* at 115, 88 S.Ct. at 262.

In light of the well-grounded concerns expressed by both counsel for the defendant and the government, I must emphasize the limited scope of my ruling. I agree with both parties that a sentence based upon a constitutionally invalid conviction is impermissible. However, I find that such a conclusion does not require that I reach the issue of the constitutionality of an underlying state conviction within the context of a sentencing hearing. Thus, the issue that I see is not one of constitutional dimension, but of procedural expediency.[17] Further, I find that there are strong interests of comity to both state appellate courts and other federal district and appellate courts in determining the constitutional validity of convictions which take place within their jurisdictions. *See e.g. Adams v. Peterson,* 939 F.2d 1369, 1374 n. 3 (9th Cir.1991) (respect for state's interest in administration of its own criminal justice system poses additional reason for deferential review of state convictions in habeas review). In addition, I note that the Ninth Circuit's recent decision in *Anderson* di-

---

17. Procedural limitations to collateral attacks are not unique. For example, when the government files an information to enhance a sentence based upon a prior conviction, a defendant may not challenge the validity of any prior conviction which occurred more than five years prior to the date of the information. *See* 21 U.S.C. § 851(e).

rects that I follow the guideline commentary in the interests of promoting consistent application, particularly where, as here, the commentary complements the guideline language. Finally, I find that the need for timely sentencing following an adjudication of guilt is consistent with the underlying goal of the Speedy Trial Act. *See United States v. Noone*, 913 F.2d 20 (1st Cir.1990) *cert. denied* — U.S. ——, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991) (speedy trial act designed to ensure prompt criminal proceedings); *United States v. Caparella*, 716 F.2d 976, 981 (2nd Cir.1983) (noting interests of defendant and society in bringing criminals to justice promptly).

Based on the foregoing, I find that I may properly rely upon facially valid prior judgments in determining whether the requisite convictions have been established for the purposes of § 4B1.1. In order to overcome a facially valid judgment, I find that a defendant must show that the conviction has been previously determined to be unconstitutionally invalid either on a direct appeal or in a habeas proceeding in accordance with Application Note 6 to § 4A1.2. If such exhaustion has not been pursued or completed prior to sentencing, then I find that the appropriate procedure is for the defendant to file a petition for a correction of this sentence pursuant to § 2255 following a determination that the conviction was unconstitutionally obtained.

### 2. *Merits of the Underlying Convictions*

Although I find that I need not reach the merits of defendant's constitutional challenges to his prior felony convictions, the issues have been extensively researched and briefed by counsel for both parties. I have reviewed all of the parties' memoranda and documentary exhibits and thus, I make the following factual findings to complete the record.

### a. 1976 Stockton, California: Robbery II

On March 31, 1974 defendant was arrested after attempting to cash several money orders which had been reported stolen from the Parson Corporation in Stockton, California. Defendant was initially represented by a San Joaquin public defender named Thomas Teaford. Mr. Teaford's file notes indicate that defendant claimed that a former Parson employee named Roy Culverson had stolen the money orders and given them to defendant in exchange for heroin. Teaford's notes indicate that he checked defendant's story by calling Parson Corporation and was informed that they had no record that anyone named Culverson had ever been employed there. Sometime thereafter, Teaford recognized Culverson's name as that of a former client. Upon checking his files he discovered that their office represented Culverson and that Culverson had at one time been employed with a Security Service. Teaford notes that the evidence of Culverson's former employment may have corroborated Avery's explanation for the money orders and that if called as a witness at Avery's trial, he would advise Culverson not to testify.

Teaford filed a motion to withdraw from Avery's case and a second attorney, Michael Barkett was appointed. When Teaford transmitted his file to Barkett, he removed the last two pages of notes which contained references to Culverson. Barkett's notes show that he was aware of the existence of Mr. Culverson and of defendant's version of the offense, but that he was unaware that Culverson had ever been employed with a security service.

On August 5, 1974, between his arrest and conviction, defendant escaped from custody. Therefore, Mr. Barkett did not meet with him to discuss the case until defendant was re-arrested in July of 1976. In his affidavit, Barkett admits that he has no independent recollection of Mr. Avery or of any of the details about his case. From his file notes, Barkett indicates that a plea agreement was reached at the pretrial conference whereby the district attorney agreed to dismiss a forgery charge, two charges involving fraudulent use of a credit card, the escape charge and a pending probation violation in exchange for a plea of guilty to one count of robbery in the second degree. Barkett admits that he did no independent investigation, but that his

notes indicate that Mr. Avery fully understood and accepted the plea agreement. On July 30, 1976, defendant entered a guilty plea in the Superior Court of San Joaquin County before Judge Biddick.

Defendant contends that he received ineffective assistance of counsel and that his plea of guilty was not knowingly and voluntarily entered. Defendant argues that if Teaford had informed Barkett about Culverson's former employment or if Barkett had conducted an independent investigation, Barkett could have advised defendant of the possibility of a viable defense and defendant might not have entered the guilty plea. Further, defendant contends that he did not really enter a guilty plea, but an *Alford* plea, and that Judge Biddick failed to follow the additional procedural requirements of *Alford.* Finally, defendant contends that the offense conduct is too old to be considered in a "prior conviction" under U.S.S.G. § 4A1.2(e)(1).

### 1) *Ineffective Assistance*

A claim of ineffective assistance implicates a defendant's Sixth Amendment Right to counsel for his defense. *United States v. Molina,* 934 F.2d 1440, 1446 (9th Cir.1991). The constitutional standard for attorney performance is that of "reasonably effective assistance." *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In applying hindsight to the earlier proceedings, there is a "strong presumption" that counsel's performance met the constitutional standard. *Id.,* at 689, 104 S.Ct. at 2065. In order to overcome this presumption, a defendant must identify material specific errors and omissions that were so serious as to fall outside of the "wide range of professionally competent assistance." *Id.,* at 690, 104 S.Ct. at 2066. In addition, a defendant must also show that the deficiency resulted in prejudice so that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

■ Although in hindsight one might find that Teaford should have alerted Bark-

ett to the omission or simply refused to send the file in its entirety, I find that Teaford acted prudently by redacting only those portions which related to Culverson. Although the memories have certainly faded, I find that Teaford could reasonably have assumed that, if defendant adhered to his story regarding Culverson, Avery would adequately protect his own interests by relaying the story to Barkett. In addition, I find that the probative value of the information regarding Culverson's former employment is speculative at best.

■ As to Barkett's alleged deficiency, the Court noted in *Strickland,* that a counsel's duty to investigate includes both "the duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691, 104 S.Ct. at 2066 (emphasis added). Following his escape and subsequent arrest, there is nothing in the record to indicate that defendant sought to achieve anything but a favorable plea agreement. Thus, I find that there is no evidence in the record to show that the need for an investigation was ever triggered by the circumstances or by the defendant himself.

■ Further, I find that even if his attorney's activity was deficient, defendant has failed to demonstrate by a preponderance of the evidence that the outcome of the proceeding would have differed. First, at the time of his guilty plea, defendant was fully aware of a potential defense to the robbery charge. Defendant was present for the preliminary examination before Judge Kim on June 5, 1974 and therefore knew that the government's case against him on the robbery charge was based almost entirely upon circumstantial evidence since none of the victims of the robbery were able to make any positive identifications. Second, his entry of a plea of guilty to the robbery II charge was the result of a successful plea negotiation whereby the government agreed to dismissal of four other serious charges to which defendant raised no objection, and in fact, admitted

his guilt.[18] Defendant was experienced with the courts and plea negotiation process and all of the evidence before me, including the transcript of the plea hearing, indicates that he both knowingly and willingly accepted the plea agreement as a result of the negotiations regarding the other charges and as an admission of guilt.

Based upon the foregoing, I find that defendant has failed to demonstrate any error on the part of his attorneys and that Teaford and Barkett acted within the range of professionally competent assistance. Moreover, even if his counsel's performance was "deficient" within the meaning of the Sixth Amendment, I find that defendant has failed to produce any evidence to support a finding that he would not have entered a plea of guilty based upon the negotiated plea agreement.

### 2) The "Alford" Plea

On July 30, 1976, defendant appeared with Barkett before Judge Biddick for the purpose of entering a guilty plea to the robbery II charge. The court advised defendant of the consequences of a guilty plea and the potential sentence. Defendant indicated that he understood the consequences of his plea and that his plea was entered freely and voluntarily. Then the court gave a brief summary of the circumstantial evidence against Mr. Avery adduced during the preliminary examination on June 5, 1974. Mr. Barkett affirmed that the court had set forth the factual background for the acceptance of the plea. Then, the following colloquy took place between the court and the defendant:

> "THE COURT: You are not entering a plea just because you want to get the deal that is offered to you? You are also entering because, in fact you believe you are guilty of the offense or if you want to put it this way, do you feel there is a strong case against you?
> THE DEFENDANT: Yes. I feel there is a strong case against me."

Finally, Judge Biddick ensured that defendant had been given enough time to consult with his attorney regarding the plea and asked defendant what plea he wished to enter. Defendant responded "guilty."

Defendant now contends that the compound question posed by Judge Biddick and his own compound answer transformed the entry of his plea from one of guilty to an *Alford* no contest plea triggering the need for special findings and cautionary instructions.

I disagree. Based upon my review of the plea hearing in its entirety, there was no mention by either defendant or his counsel that defendant raised a claim of innocence to the charge. The court's "compound question" was merely a way of ensuring that defendant agreed that the facts adduced at the preliminary hearing were what the government would be able to prove if the case went to trial. Defendant's latter response of "guilty" to the court's question regarding what plea he wished to enter was unequivocal.

### 3) Timeliness

Guideline § 4A1.2(e) provides the applicable time periods for use of a prior sentence in computing a defendant's criminal history score. Subsection (e)(1) instructs that any prior sentence of imprisonment exceeding one year that was imposed within fifteen years of the commencement of the instant offense is counted.

Although the conduct which forms the basis for the robbery II conviction occurred over fifteen years ago, the conviction and sentence on that charge fall within the fifteen year period. Accordingly, I find that the 1976 sentence is properly included within defendant's criminal history.

### b. 1976 Oklahoma: Conspiracy to Commit Bank Robbery [19]

On November 6, 1975 Officer Anderson met with a former police officer at a res-

---

18. In Teaford's interview notes, defendant indicates that he is guilty of all charges against him except the robbery charge which he attributed to Culverson.

19. At the outset I note that I need not reach the issue of the constitutional validity of the Oklahoma conviction at all since the 1983 Oregon bank robbery conviction and the 1976 robbery II conviction satisfy the minimum two prior

taurant next to a motel in Duncan, Oklahoma. The former officer told Anderson that he had seen two groups in two different cars travelling slowly through the neighborhood and eventually parking at the motel next door. Officer Anderson located the vehicles in the lot next door and ran a license check over his radio. When he returned to the police station, Anderson received a report that one of the vehicles had been reported stolen in Centerville, Texas.

Anderson then returned to the motel with two other officers to investigate. Officer Nicholson checked the room registry and first encountered the defendant while he was standing at the registration desk. Nicholson identified himself, told Avery that he was investigating the stolen vehicle and asked Avery if he knew anything about it. Defendant told the officer that he was an occupant of one of the vehicles but that he had hitched a ride along the highway and didn't know anything about the vehicle having been stolen.

After checking the registry, the officers entered the two rooms nearest the vehicles and arrested the occupants. Defendant and his cousin were placed in a separate police car, taken to the station and asked to sign written statements. After signing the statements they asked an officer for a ride back to the main road. While Officer Blades was driving defendant and his cousin to the highway, he received a follow-up report from the Centerville Texas Police which provided descriptions of two suspects involved in the stolen vehicle case, one of which matched the defendant. The Officer immediately placed Avery under arrest and advised him of his *Miranda* rights. Upon their return to the station defendant signed an advice of rights form. However, the officers testified during a hearing on pretrial motions that they did not question defendant because the vehicle had crossed state lines and the case would likely be referred to the FBI.

Following his arrest, the officers returned to the motel and obtained the manager's consent to search the rooms. During their search they found several drawings including a map believed to be a diagram of the Healdton Bank.

A district court in the Eastern District of Oklahoma and a district court in the Western District of Oklahoma conducted lengthy evidentiary hearings on defendant's motions to suppress statements and evidence seized from the motel room. Defendant raised the following arguments: (1) his arrest was illegal and therefore any statements obtained following his arrest should be suppressed as tainted fruit; (2) the three day delay from his arrest to the time he was brought before a magistrate constituted coercion which rendered his confession involuntary; and (3) items seized from the motel room without a search warrant should be suppressed.

In an order dated April 30, 1976, the court in the Eastern district found that defendant was not under arrest but was being questioned solely as a witness at the time he gave his oral and written statements to the officers. The court found that his arrest was proper and supported by probable cause and that he was properly advised of his rights prior to making any statements to the FBI on November 11, 1975. The court further found that the timing of the interrogation was neither unreasonable nor coercive. Finally, the court found that the officers were justified in searching the room without a warrant based upon the fact that defendant had already checked out of the room and that the officers had obtained consent from the motel manager.

In an order dated February 4, 1976, the court for the Western District of Oklahoma found that the incriminating statements defendant made to the FBI were given after proper *Miranda* warnings and the defendant had failed to produce any evidence that the statements were obtained as a

conviction requirement of 28 U.S.C. § 994(h)(2)(A) and U.S.S.G. § 4B1.1. However, because the parties have gone to great efforts to gather these materials, and further, because I

have already read them in their entirety, the following constitutes my findings for the sole purpose of completing the record at this time.

result of promises, force, threats or coercion.

On May 13, 1976 defendant was sentenced following a jury trial and conviction for conspiracy to rob a bank in Healdton, Oklahoma. During trial, the government alleged that defendant gathered a group of people together in Texas for the purpose of robbing a bank in Oklahoma. When the group surveyed the bank they discovered that it was located next door to a police station. Defendant contends that he then abandoned the plan to rob the bank and the group had some discussion about the possibility of robbing a jewelry store instead.

Following his conviction, defendant filed an appeal to the Tenth Circuit Court of Appeals on two grounds: (1) that there was insufficient evidence of an "agreement" amongst the alleged coconspirators; and (2) the court's failure to voir dire the jurors for prejudice.[20]

Defendant now contends that both his trial and appellate counsel were ineffective for the following reasons: (1) trial counsel did not read a transcript prior to the hearing on suppression motions; (2) trial counsel failed to assert a withdrawal defense; (3) trial counsel permitted defendant to appear at trial in the same suit he wore during several of the alleged overt acts; (4) appellate counsel failed to appeal the denial of his motions to suppress statements and evidence; (5) appellate counsel failed to raise the aforementioned errors of trial counsel.

### 1) *Failure to Read a Transcript*

■ Defendant argues that his trial counsel's apparent lack of familiarity with a transcript used to supplement an affidavit in support of a search warrant for an automobile was so egregious as to violate his right to counsel.

Based upon my review of the pre-trial transcripts, I find that defendant's trial counsel competently represented his interests. This one alleged failing is *de minimis* in light of counsel's overall performance. The record reveals that Mr. Edmondson thoroughly questioned Detective Chasteen regarding the contents of the affidavit prepared in support of the search warrant so that any alleged failure to completely prepare for the hearing was harmless.

### 2) *Failure to Raise a Withdrawal Defense*

■ At trial, defendant argued that he and his alleged co-conspirators never reached an "agreement" on a plan to rob the bank, and thus a conspiracy was never formed. Because the clarity of hindsight is often unfairly burdensome, such a strategic decision is entitled to a strong presumption of reasonableness. *See e.g. Molina,* 934 F.2d at 1448 (failure to object to prosecutor's comment on closing did not constitute ineffective assistance); and *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2066.

■ A withdrawal from a conspiracy requires a "disavowal of the conspiracy or definitive, decisive and positive steps to show that the conspirator's disassociation from the conspiracy is sufficient." *United States v. Loya,* 807 F.2d 1483, 1493 (9th Cir.1987). To avoid complicity in a conspiracy, one must withdraw before any overt act is taken in furtherance of the agreement. *Id.* The overt act need only be a concrete step toward carrying out the agreement, not one that actually accomplishes the goal of the conspiracy. *United States v. Sarault,* 840 F.2d 1479, 1487 (9th Cir.1988). A defendant is not entitled to receive a jury instruction on this defense when his alleged withdrawal occurred after an overt act took place. *Loya,* 807 F.2d at 1493.

Throughout the proceedings, defendant claimed that he and his co-conspirators never reached an agreement to commit the offense charged. All but one of the alleged co-conspirators corroborated this theory by testifying that an agreement was never reached. Although "withdrawal" may have been raised as an alternative theory, it is equally plausible that trial counsel rejected such a tactic in light of the inconsistency it raises when a defendant denies that a conspiracy ever existed. Fur-

---

**20.** Neither counsel provided a copy of the Tenth Circuit's disposition on appeal, so I am working under the assumption that defendant's conviction was affirmed without decision.

ther, even if his trial counsel had argued withdrawal, it is likely that the court would have refused to give an instruction on the defense since defendant admitted driving to Oklahoma, one of the alleged overt acts taken in furtherance of the conspiracy. Withdrawal after that act would have been ineffective.

Based upon the foregoing, I cannot say that the failure to raise the defense of withdrawal was professionally unreasonable or that there is a probability that the outcome of trial might have differed but for the decision not to pursue such a stratagem.

### 3) *The Burnt Orange Suit*

█ Defendant contends that for part of the trial he wore the same burnt orange suit he was wearing at the time of his arrest and at various times leading up to his arrest, and that several witnesses at trial identified him because of the suit.

Based upon my review of the record, I find that identification was not an issue in this case, and therefore Mr. Edmondson's failure to notice or request that his client change clothes was harmless.

### 4) *Motions to Suppress*

█ Defendant contends that his appellate counsel was ineffective because he failed to appeal the denial of his motions to suppress evidence and statements. Although the failure to raise certain issues on appeal may make it more difficult for defendant to raise the issues for the first time in a habeas proceeding [21], this is not the type of prejudice which would automatically require a finding of constitutional invalidity.

In this case, many of the usual difficulties in reviewing prior trial court proceedings were alleviated since the Oklahoma district courts made extensive written factual findings on defendant's motions to suppress. I have reviewed these orders and the transcripts of the pretrial hearings and find that the district court decisions are accurate summations of the evidence and correct statements of the law. Thus, had defendant's counsel raised the denial of these motions on appeal, the district court rulings would have been affirmed.

Based on the foregoing, I find that counsel's failure to appeal the denial of these motions was within reasonable professional discretion. Further, I find that defendant has failed to show by a preponderance of the evidence that the outcome of the appeal would have differed had counsel challenged the district courts' denials of his motions to suppress.

### 5) *Failure to Raise Trial Counsel Errors*

For the reasons set forth above, I find that trial counsel actions were reasonable, and that the alleged "errors" were *de minimis* or harmless in light of all of the circumstances in the case. Accordingly, appellate counsel's failure to raise these issues on appeal falls within the wide range of professionally competent assistance.

### CONCLUSION

Based upon the foregoing, I find that defendant may not collaterally attack facially valid prior convictions at the time of sentencing. However, for the purposes of this opinion, I have considered the merits of defendant's challenges to two of his prior convictions and I find that he has failed to show, by a preponderance of the evidence, that his convictions are constitutionally infirm. Accordingly, defendant's objections to paragraphs 35, 36, 41, 43, and 45–48 of the presentence report are denied.

█

---

**21.** Unlike the "preponderance of the evidence" standard of review employed by the Ninth Circuit in *Newman,* a court reviewing a petition for habeas corpus relief would decline to reach the issues regarding appellate counsel's failure to appeal the denial of defendant's motions to sup-

press in the absence of a showing of both cause for, and prejudice from the default. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).